NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| U.S. SPECIALTY INSURANCE CO., : <br> : <br> Plaintiff, : <br> v. : <br> SUSSEX AIRPORT, INC. et al., : <br> : <br> Defendants. : | Civil Action No. 14-5494 (SRC)(CLW) <br><br> OPINION |

**CHESLER**, District Judge

This matter comes before the Court upon Plaintiff U.S. Specialty Insurance Co.'s ("Plaintiff") motion for summary judgment against Defendants Sussex Airport, Inc., Paul Styger, and Jean Styger (collectively, "Defendants") [Docket Entry 20]. Defendants have opposed the motion. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment.

**I. BACKGROUND**

This action arises from a skydiving accident that occurred at the Sussex Airport on May 19, 2012. Plaintiff issued an Airport Liability Policy (the "Policy")[1] to Defendant Sussex Airport, Inc., for the period from March 12, 2012 to March 12, 2013. (Policy Number UA-00147987-07; Pls.' SUF ¶ 1; Defs.' SDF ¶ 1.) The Policy covers certain liability that Defendants

---
[1] The Policy covers airport bodily injury and property damage liability, products completed operations hazard bodily injury and property damage liability, hangarkeeper's liability, and certain medical payments. (Compl., Ex. A.)

1

Paul Styger and Jean Styger may have incurred in their capacity as officers, employees, or stockholders of Defendant Sussex Airport, Inc., which the Stygers owned at the time of the skydiving accident in 2012  (Pls.' SUF ¶¶ 2, 4; Defs.' SDF ¶¶ 2, 4.)  The Policy states that "[Plaintiff] will pay those sums that [Defendant Sussex Airport, Inc.] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . . We will have the right and duty to defend any suit seeking those damages [except where certain exceptions apply]. . ." [Docket Entry 22, Ex. D, at 1].  The Policy includes a Parachute Jumping exclusion (the "Exclusion"), stating as follows:  "This insurance does not apply to . . . **[b]odily injury** or **property damage** arising out of the conduct of or participation in, or preparation for, any parachuting activities."  (Pls.' SUF ¶ 3; Defs.' SDF ¶ 3) (emphasis in original).  When Defendant Paul Styger obtained the Policy, he did not request coverage for liability arising from parachute operations as part of the Policy, and he did not discuss issues related to parachute operations with Plaintiff.  (Pls.' SUF ¶¶ 7, 10-11; Defs.' SDF ¶ 7, 10-11.)

For a period of time leading up to the skydiving accident at issue, Skydive Sussex, LLC paid Defendants $1200 per month during the skydiving season to operate a parachute jumping concession at Sussex Airport.  (Pls.' SUF ¶ 5; Defs.' SDF ¶ 5.)  Defendants authorized a drop zone for parachuting activities operated by Skydive Sussex, LLC on the southwest side of the Sussex Airport runway.  (Pls.' SUF ¶ 6; Defs.' SDF ¶ 6.)

On May 19, 2012, Reginald A. Wood ("Wood") allegedly purchased a tandem skydive from Skydive Sussex, LLC[2] [Docket Entry 22, Ex. E, ¶ 6].  Wood completed his skydive on the

---

[2] Wood's Complaint in the Underlying Action alleges that he purchased a tandem skydive from Skydive Sussex, LLC, New Jersey School of Gravity, LLC, Freefall Adventures, LLC, and/or Skydive Crosskeys [Docket Entry 22, Ex. E, ¶ 6].

2

same day, and his flight took off from Sussex Airport [Docket Entry 22, Ex. E, ¶ 7]. During the skydive, Wood allegedly landed outside of the established drop zone on the Sussex Airport site and collided with a parked motor vehicle, causing significant bodily injuries [Docket Entry 22, Ex. E, ¶¶ 9-10]. On May 12, 2014, Wood filed suit in the Superior Court of New Jersey, Law Division, Union County (the "Underlying Action"), to obtain damages for the injuries he allegedly sustained during his skydive. (Docket No. UNN-L-1541-14; Pls.' SUF ¶ 14; Defs.' SDF ¶ 14.) Plaintiff is currently defending Defendants in the Underlying Action, but Plaintiff notified Defendants on June 10, 2014 that, based on the Exclusion among other reasons, it reserved its rights (1) to disclaim liability and coverage for the Underlying Action's claims, and (2) to recoup the costs of defense in the Underlying Action, should the Policy not apply. (Pls.' SUF ¶ 20; Defs.' SDF ¶ 20; Docket Entry 22, Ex. G.)

Plaintiff filed a Complaint on September 3, 2014, seeking declaratory judgments that the Policy does not cover the claims in the Underlying Action due to the Exclusion, and that Plaintiff is entitled to recoup the costs it has expended in defending the Underlying Action [Docket Entry 1]. On October 22, 2014, Defendants filed an Answer and Counterclaim, stating that the Complaint is without merit and requesting that the Court declare that the Policy covers Defendants in the Underlying Action [Docket Entry 13].

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of

3

the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a

4

genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

### III. DISCUSSION

Plaintiff first moves for summary judgment, based on its request for a declaratory judgment that Defendants are not covered by Plaintiff's policy for claims in the Underlying Action arising from Wood's skydiving incident on May 16, 2012 at Sussex Airport. Plaintiff also asks the Court to order Defendants to reimburse Plaintiff for the costs expended in defending the Underlying Action. Finally, Plaintiff requests that the Court dismiss Defendants' Counterclaim. The Court will examine each request in turn.

#### A. MOTION FOR SUMMARY JUDGMENT ON COUNT I (DECLARATORY JUDGMENT)

Interpretation of an insurance contract is a question of law for the Court's determination, and thus the issue may be decided on summary judgment. *See, e.g.*, *Simonetti v. Selective Ins. Co.*, 372 N.J. Super. 421, 428 (N.J. Super. Ct. App. Div. 2004). The New Jersey Supreme Court has summarized the law of insurance policy interpretation as follows:

> Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled. The terms of insurance contracts are given their plain and ordinary meaning, with

ambiguities resolved in favor of the insured. Nonetheless, courts cannot write for the insured a better policy of insurance than the one purchased.

*Mem'l Props., LLC v. Zurich Am. Ins. Co.*, 201 N.J. 512, 525 (2012) (citations omitted).

Exclusionary clauses in an insurance contract are presumptively valid and shall be enforced if they are "specific, plain, clear, prominent and not contrary to public policy." *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997) (quoting *Doto v. Russo*, 140 N.J. 544, 556 (1995)). The New Jersey Supreme Court has noted that exclusionary clauses should be construed narrowly, with the burden "on the insurer to bring the case within the exclusion." *Flomerfelt v. Cardiello*, 202 N.J. 432, 442 (2010) (citation omitted). Where the exclusionary clause's terms are ambiguous, "courts apply the meaning that supports coverage rather than the one that limits it . . . [but i]f the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Id.* (quoting *Longobardi v. Chubb Ins Co. of N.J.*, 121 N.J. 530, 537 (1990)).

An insurer has a duty to defend "when the complaint states a claim constituting a risk insured against"; that is, when the complaint's allegations and the policy's language correspond, regardless of the claims' merits. *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173 (1992) (citation omitted). A duty to defend clause is enforceable where there is a "potentially-coverable occurrence" that would be indemnified, if proved valid. *Id.* at 180. "[A]n insurer bears the burden of proving that a policy exclusion precludes coverage." *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 329 (1998).

The parties do not seem to dispute that the Policy would cover Wood's bodily injury claims in the Underlying Action, if the Exclusion does not apply here. Again, the language of the Exclusion is: "This insurance does not apply to . . . **[b]odily injury** or property damage

6

arising out of the conduct of or participation in, or preparation for, **any parachuting activities**." (Pls.' SUF ¶ 3; Defs.' SDF ¶ 3) (emphasis added).   Plaintiff reads the Exclusion to apply to any claims "arising out of" parachuting activities, which in its view includes the operation of Skydive Sussex LLC's skydiving operations at Defendants' airport.  New Jersey law states that, in the context of insurance contract interpretation, "the phrase 'arising out of' must be interpreted in a broad and comprehensive sense to mean 'originating from' or 'growing out of' the [activity] . . . there need be shown only a substantial nexus" between the activity and the injury.  *Penn Nat. Ins. Co. v. Costa*, 198 N.J. 229, 237 (2009) (quoting *Westchester Fire Ins. Co. v. Cont'l Ins. Co.*, 126 N.J. Super. 29, 38 (N.J. Super. Ct. App. Div. 1973)).  Plaintiff asks the Court to interpret the Exclusion as prohibiting coverage for Defendants' liability arising from any parachuting activities occurring on Defendants' property, including the skydiving that Defendant Sussex Airport, Inc.'s tenant, Skydive Sussex LLC, conducted at the Sussex Airport.  Based on this reading of the Exclusion, the bodily injury claims Wood has brought in the Underlying Action clearly arise from parachuting activities at the airport Defendants owned.

Conversely, Defendants argue that the Exclusion should only apply if Defendants themselves were directly involved in the parachuting activities at issue, given that the Exclusion specifies it applies where the insured has "conduct[ed], participat[ed] in, or prepar[ed] for" parachuting activities.  Defendants assert that the Exclusion does not apply to the Underlying Action, given that Defendants did not directly operate the skydiving activities at the Sussex Airport—Skydive Sussex, LLC did.  In effect, Defendants' interpretation would require the Court to rewrite the Exclusion such that it only applies where bodily injury occurred due to actions taken <u>directly</u> by the insured.  Should Plaintiff have desired to restrict the Exclusion so that it only covered parties "directly engaged" in parachuting activities, however, it could have

7

done so explicitly. A far more natural reading of the Exclusion, in context with the Policy, is that the Exclusion is not limited based on which party physically conducted the parachuting activities—it does not cover "[b]odily injury . . . arising out of the conduct of or participation in, or preparation for, **any** parachuting activities" (O'Mea Cert. Ex. D. at 6) (emphasis added). *See, e.g.*, *Countryway Ins. Co. v. Slaugenhoup*, 360 F. App'x 348, 350-51 (3d Cir. 2010) (rejecting insured's interpretation that an exclusion precluding claims arising under "the use of a motorized vehicle" only pertained to the insured's use of a motorized vehicle); *Allstate Ins. Co. v. Moraca*, 244 N.J. Super. 5, 12 (N.J. Super. Ct. App. Div. 1990) (finding that an exclusion from liability arising from the ownership, maintenance, or use "of any motorized land vehicle" applied to "*any* motorized land vehicle' regardless of 'ownership, maintenance, or use." (emphasis in original)). "[C]ourts cannot write for the insured a better policy of insurance than the one purchased," and therefore the Court will decline to rewrite the Exclusion here based on Defendants' more restrictive interpretation. *Mem'l Props., LLC*, 201 N.J. at 525. The Court finds that the Exclusion is unambiguous, and it applies to the claims in the Underlying Action given that those claims arise out of parachuting activities.

Defendants next argue that even if the Exclusion applies to Defendants for claims in the Underlying Action, Plaintiff may still have a duty to defend the Underlying Action because Defendants' potential liability in the Underlying Action may be unrelated to "the conduct of or participation in, or preparation for, any parachuting activities." This argument is also futile. For Plaintiff to have a duty to defend the Underlying Action, the Underlying Complaint would need to state a cause of action that does not fall under the Exclusion. *See Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173, 180 (1992). The Underlying Complaint alleges that the skydiving flight commenced from Sussex Airport, that Defendants "did not conform to applicable

8

skydiving standards of care," and that Defendants "established a drop zone that was not in conformance with industry standards" [Docket Entry 22, Ex. E, ¶¶ 7-10].  In fact, the Underlying Complaint only alleges causes of action related to the events surrounding Wood's skydive, including duties Defendants allegedly had to Wood.  As discussed above, these allegations fall squarely within the Policy's Exclusion.  Thus, Plaintiff has met its burden to show that the Exclusion precludes coverage for Defendants in the Underlying Action.  *Carter-Wallace, Inc. v. Admiral Ins. Co.*, 154 N.J. 312, 329 (1998).  For these reasons, Plaintiff is not obligated to defend or indemnify Defendants in the Underlying Action.

Count I of the Complaint seeks a declaratory judgment that Plaintiff does not have a duty to defend or indemnify Defendants under the Policy, for the claims asserted in the Underlying Action.  Plaintiff has shown that it is entitled to judgment on this claim, as a matter of law.  On Count I, the motion for summary judgment will be granted.

### B. MOTION FOR SUMMARY JUDGMENT ON COUNT II (REIMBURSEMENT OF DEFENSE COSTS FOR THE UNDERLYING ACTION)

In Count II of the Complaint, Plaintiff requests a declaratory judgment from this Court that Plaintiff has the right to reimbursement for the costs it has expended in the Underlying Action.  The right of reimbursement exists in cases where an insurer honored its duty to defend but sought reimbursement from an insured for fees incurred in defending a non-covered claim "because the insured would be unjustly enriched in benefiting by, without paying for, the defense of a non-covered claim."  *Hebela v. Healthcare Ins. Co.*, 370 N.J. Super 260, 279 (N.J. Super. Ct. App. Div. 2004) (citing *Buss v. Superior Ct.*, 939 P.2d 766, 776-78 (Cal. 1997)); *see also Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F. 2d 1212, 1224-25 (6th Cir. 1980) (holding, in a case interpreting New Jersey law, "[t]he duty to defend arises solely under contract.  An

9

insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the distinction can readily be made, the insured must pay its fair share for the defense of the non-covered risk."); *SL Industries, Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 215 ("We believe that [the principle stated in *Forty-Eight Insulations*] obligates the insurer to pay only those defense costs reasonably associated with claims covered under the policy."). Given this principle and the Court's finding that Plaintiff does not have a duty to defend the Underlying Action given the Policy's Exclusion, the Court finds that Plaintiff is entitled to reimbursement for its costs expended in defending the Underlying Action.

Count II of the Complaint seeks a declaratory judgment that Plaintiff may seek reimbursement from Defendants for the costs of defending the Underlying Action. Plaintiff has shown that it is entitled to judgment on this claim, as a matter of law. On Count II, the motion for summary judgment will be granted.

### C. MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

Finally, Plaintiff asks the Court to dismiss Defendants' Counterclaim, which requested a declaration that the Policy covers Defendants in the Underlying Action. Given that Defendants are not entitled to coverage under the Policy for the Underlying Action, the Court will thus dismiss Defendants' counterclaim.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment on Counts I and II of the Complaint, and will dismiss Defendants' Counterclaim. An appropriate Order will be filed herewith.

                                                    s/ Stanley R. Chesler
                                                  STANLEY R. CHESLER
                                                United States District Judge

Dated:  May 9, 2016